FRUGÉ, Judge.
This case is an action in contract which comes here on appeal after the district court rendered judgment in favor of plaintiff.
We adopt in large the written reasons for judgment given by the trial court as our own.
“This is a suit by the law firm of Mouton, Champagne & Colomb against Dr. Ralph L. Bourgeois to recover the sum of SEVEN THOUSAND, TWO HUNDRED AND FIFTY ($7,250.00) DOLLARS alleged to be due as a result of a contract of employment whereby Mr. Wel-ton P. Mouton, Sr., a member of the firm, was employed by the defendant to open and handle the proceedings in the Succession of Louis Abel Bourgeois, defendant’s father.
“Defendant answered with a general denial and reconvened asserting that should the Court find that plaintiff was employed that he has been damaged for having to pay penalties for failure to pay Louisiana State and Federal Estate Taxes because Mr. Mouton failed to advise him that there might be taxes due.
“Defendant has also made a part of his answer an exception of prescription because more than three years have elapsed since performance of the services.
*548 “The evidence indicates that Mr. Welton Mouton had been the attorney for the deceased, Louis A. Bourgeois, for many years prior to his death and had advised him in many business and personal transactions. A few days after the death of Mr. Bourgeois the defendant, the only son of Louis Bourgeois, (the deceased was also survived by his widow) called Mr. Mouton on the telephone requesting that the proper steps be taken to enter the deceased’s bank box in one of the banks in Lafayette, Louisiana. An appropriate order was obtained from the Court and Mr. Mouton, Dr. Bourgeois and a stenographer went to the bank and made an inventory of the contents found in the safety deposit box. There is some discrepancy in the testimony of Mr. Mouton and Dr. Bourgeois at this juncture as to the exact conversation which took place over the telephone and during the visit to the bank. Mr. Mouton testified that it was his impression that he was employed to open the succession and do all of the necessary work in order to have Mr. Louis Bourgeois’ widow and his son placed into possession of his estate. Since Mr. Mouton had been Mr. Louis Bourgeois’ attorney and counsellor, the telephone call from his son a few days subsequent to his death came as no surprise to him. Dr. Bourgeois, on the other hand, contends that he did not employ Mr. Mouton to open the succession but merely to obtain a court order to open the bank box. His testimony was ‘he did not want to open the succession’.
“Following the inventory made at the bank Mr. Mouton had his law partner, Mr. Patrick Colomb, search the public records in the Clerk’s office of Lafayette Parish and inventory the real estate owned by Mr. Louis Bourgeois. Mr. Colomb testified that he did this using approximately two days to accomplish the job.
“Mr. Mouton thereupon proceeded to prepare the necessary papers to complete the business which he considered himself to be employed to do.
“Mr. Mouton testified that he explained to Dr. Bourgeois what had to be done to handle the succession and advised him that it was necessary that he be informed of other property of the decedent such as bank accounts, etc., and that a valuation be placed upon the several items of real estate. Months passed without Dr. Bourgeois ever going to the office of Mr. Mouton with the requested information. The two would meet coincidentally on street corners, at meetings of the Rotary Club, at social functions and the like whereupon Mr. Mouton would, as the occasion arose, inform Dr. Bourgeois that he still needed the information and that it was something that ought to be attended to. Dr. Bourgeois frankly admits that he did see Mr. Mouton during normal social intercourse but denies that he ever intended to give Mr. Mouton the impression that he wanted the succession of his father completed. He also admits that Mr. Mouton ‘may have mentioned values to be placed on the property’. There were never witnesses to any conversations the two had concerning this particular business.
“Dr. Bourgeois testified that at one of these meetings some months later he told Mr. Mouton that his mother did not want to open the succession, whereupon Mr. Mouton discontinued performing any work toward completing the succession and did not discuss the matter further with Dr. Bourgeois. Mr. Mouton’s version of the conversation was that the doctor’s mother did not want to finish the succession. Here, then, the business was in a so-called state of limbo and the Court is inclined to believe Mr. Mouton’s version as he never sent to Dr. Bourgeois a statement for services rendered. His belief that the business would ultimately be completed by him seems justified.
“Mr. Louis Bourgeois died in the year 1955 and, some nine or ten years later, his surviving spouse died. Dr. Bourgeois then employed another attorney to open the succession of both his father and his mother. He did not inform this attorney of *549 the fact that Mr. Mouton had performed any services for him in connection with the estate of his deceased father and when the newly employed attorney opened the successions he was not aware of the fact that Mr. Bourgeois’ succession had already been opened by the plaintiff law firm. The lawyer who opened both successions did not make a search of the probate records to determine whether or not the succession of Mr. Bourgeois had been opened and not anyone in connection with this litigation has contended or inferred that his action was in any way improper. In fact, because of the long passage of time between the death of Mr. Bourgeois and that of his surviving spouse the Court can very well understand just how this could in all good faith happen.
“It was not until Mr. Mouton learned in a roundabout way that the successions of Mr. Bourgeois and his widow were opened that he knew of Dr. Bourgeois’ actions. Dr. Bourgeois during the interim had consulted and employed the services of Mr. Mouton to do several minor legal transactions such as sales, mortgages, etc. In connection with the succession also, Mr. Mouton had collected some insurance proceeds and Dr. Bourgeois knew of this.
“It is the Court’s opinion that Dr. Bourgeois had employed the plaintiff law firm to open the succession of his father. It is entirely reasonable that Mr. Mouton, the attorney for defendant’s father for many years, did expect that he be employed to perform this essential legal task. Dr. Bourgeois attached much significance to the wording of the court order prepared by Mr. Mouton to the effect that it was for the purpose of searching for a will when he, Dr. Bourgeois, never thought there was a will. There is nothing unusual about this as it is the customary procedure adopted by most lawyers as one of the means for obtaining judicial sanction and approval to enter the bank box of a deceased person.
“Dr. Bourgeois testified that he was never the agent for his mother and that she spoke for herself and made her own decisions concerning such things as handling the succession of her deceased husband. The evidence reflects that she was a woman of limited education and upon the death of her husband found herself alone with no one to lean upon except her son who was a professional man and a man with knowledge of business affairs and she no doubt depended upon his advise about many things. This was certainly to be expected and it would be odd indeed for the situation to have been otherwise. The evidence does not reflect that Mr. Mouton ever discussed the succession business with Mrs. L. A. Bourgeois.
“It is the Court’s considered opinion that Dr. Bourgeois’ actions throughout would reasonably lead any attorney to the belief that he had been employed to handle the succession of Mr. Bourgeois and that he is entitled to be paid for his services.
“The court does not believe that the reconventional demand of the defendant is well taken. Dr. Bourgeois denies that Mr. Mouton ever discussed inheritance taxes with him, yet at the same time admits that he had been told by Mr. Mouton that taxes might be due. Mr. Mouton testified that he had prepared a pencilled, rough copy of a federal tax return shortly after employment in 1955 which he intended to supplement after he had received the proper valuation from Dr. Bourgeois. The Court has known Mr. Mouton for many years and knows him to be an able, honest and ethical attorney and it is inconceivable that he would not have advised one whom he believed to be his client, and for whom he was performing a service, of the possible tax consequences as a result of the death of Mr. Bourgeois. * * *
“It is also the Court’s opinion that Mr. Mouton, through no fault of his own, had never completed the legal services for which he had been employed so prescription did not begin to run until the contract of employment terminated which was *550 well within three years prior to the filing of this suit. Therefore, the exception of prescription is overruled.
“The attorney who handled the Successions of Mr. and Mrs. L. A. Bourgeois charged SEVEN THOUSAND, TWO HUNDRED FIFTY AND NO/100 ($7,-250.00) DOLLARS for the services rendered in the Succession of Mr. Bourgeois alone. Mr. Mouton asks for the same amount. Since this is over and above the minimum amount allowed by the Lafayette Bar Association Schedule of Fees, it is in order.”
In view of the conflicts in the testimony of Mr. Mouton and Dr. Bourgeois, it was necessary for the trial court to accept one version over the other. In so doing, the trial judge attached greater weight to the testimony of Mr. Mouton, and thereby concluded from their actions and words that the parties had actually entered into a contract whereby plaintiff was to open the succession of Mr. L. A. Bourgeois. See C.C. Arts. 1811, 1816, 1817, and 1818. We are unable to say that this conclusion was manifestly erroneous; nor can we say that the award was excessive.
On this appeal defendant has re-urged his peremptory exception of prescription. He contends that inasmuch as three years have passed since plaintiff has performed any work in regard to Mr. Bourgeois’ succession, that cause of action has prescribed under the rule of C.C. Art. 3538.
We feel that the trial judge properly disposed of this question in his reasons for judgment (quoted supra). The purpose of plaintiff’s employment was not accomplished, the employment was not terminated, and plaintiff’s services were not completed — only because defendant requested that plaintiff hold matters in abeyance. Cf. Lyons v. Hall, 90 So.2d 519 (La.App.2d Cir., 1956).
Defendant contends that Mr. Mouton’s testimony alone is insufficient evidence to warrant a finding of a binding contract for services valued in excess of $500.00. He relies on C.C. Art. 2277 which provides in part: “ * * * such [unwritten] contracts or agreements, above five hundred dollars in value, must be proved at least by one credible witness, and other corroborating circumstances.”
The testimony of Mr. Mouton, Sr. along with other corroborating evidence noted by the trial judge above satisfies the requirements of C.C. Art. 2277. See Ory v. Griffin, 162 So.2d 97 (La.App.1st Cir., 1964).
For the above reasons the judgment of the trial court is affirmed at appellant’s costs.
Affirmed.