I, PATRICIA RIVET MURRAY, Judge.
This is a suit by an attorney against a former client to recover attorney’s fees on the basis of two notes, a contract, or quantum meruit. From a judgment in favor of the defendants, Joy Levet wife of/and Geoge A. Celia, III, the plaintiff, Patrick D. Breeden, appeals.[1] We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

■ This ease arises out of an attorney-client relationship that spanned a decade. The relationship began in late 1987 when Mr. Celia engaged Mr. Breeden’s services, and ended in May 1998 when (due to the conflict of interest created by filing this suit) Mr. Breeden withdrew as counsel of record in the remaining two cases. According to Mr. Breeden, all the cases on which he was retained involved financial institutions that were suing Mr. Celia by executory or ordinary process on a mortgage that Mr. Celia had given to them to secure a loan or on the note to recover the amount loaned plus interest, attorney fees and costs or on both.
|2Throughout the relationship, one monthly bill was sent for all the matters on which Mr. Breeden represented Mr. Celia.[2] Until 1993, Mr. Breeden’s billing system was not computerized, and his bills included little, if any, description of what services were provided. Indeed, the early *1074 bills generically referenced “all cases.” Although his subsequent bills generally provided descriptions of services performed, many of them provided no indication regarding the particular case for which such services were rendered.
The largest matter on which Mr. Bree-den represented Mr. Celia involved St. Bernard Savings and Loan Association (the “St. Bernard matter”). That admittedly complex lender-liability litigation was commenced in state court, but transferred to federal court when the Resolution Trust Corporation (“RTC”) took over St. Bernard Savings and Loan Association. In that matter, two settlements were ultimately reached in August 1994; one was with the RTC, and the other was with two of the bank’s insurance companies.
Confined to the St. Bernard matter, Mr. Breeden purportedly had Mr. Celia sign a contingency fee contract on May 5, 1988, which included the following pertinent provision:
a. Thirty-three and one-third (33 )é%) percent of any amount recovered or saved before suit is filed, or forty (40%) percent of any amount recovered or saved after suit is filed, or fifty (50%) percent of any amount recovered or saved if there is an appeal of any issue due as of the date of the notice of appeal or motion-order of appeal is filed, or;
b. The rate of $140.00 dollars per hour, plus any increase in the Consumer Price Index from the date hereof for legal services rendered, or;
|3c. The attorney fees awarded per judgment or order of the Court or payable pursuant to consent, compromise or settlement decree, whichever is greater between (a), (b) or (c) ...
Pursuant to subpart b. of the contract, Mr. Breeden continued to bill Mr. Celia monthly on a hourly basis for his services in the St. Bernard matter; however, he continued the practice of billing all the matters in a single monthly statement.[3] All the monthly bills were based on an hourly rate, which initially was $140.00. Over the years, the hourly rate was gradually increased to $240.00.
At the commencement of the relationship, Mr. Celia was required to pay a $5,000.00 retainer, which was deposited into Mr. Breeden’s trust account. Subsequent payments of fees were also initially deposited into the trust account and then taken out to pay fees and costs.
In this regard, Mr. Celia testified that during the interval between late 1987 through October 1990, he made routine payments on the monthly bills to Mr. Breeden totaling $54,470.00. Mr. Celia also introduced a listing of those payments; to wit:
Date ck # Am
11/12/87 2944 5,000.00 [retainer]
12/11/87 1,470.00
1/21/88 2977 3,000.00
2/18/88 3008 3,500.00
3/22/88 3068 1,000.00
4/14/88 3092 3,500.00
5/23/88 3123 2,500.00
6/18/88 3164 2,000.00
11/15/88 3208 2,500.00
1/12/89 3220 2,500.00
2/6/89 3222 2,000.00
4/7/89 3227 2,000.00
146/14/89 3229 2,500.00
*1075 7/27/89 3232 1,500.00
9/8/89 * 1,500.00
1/17/90 * 2,000.00
1/31/90 * 2,500.00
3/31/90 ' * .1,000.00
3/31/90 * 4,000.00
5/18/90 * 2,500.00
6/22/90 * 2,000.00
10/90 * 5,000.00
Mr. Breeden acknowledges receiving those payments plus an additional $3,000.00 on November 7, 1995. Conversely, Mr. Celia testified that he was certain the October 1990 payment, listed above, was the last check he wrote to Mr. Bree-den. Mr. Celia further testified that he was certain of the date of his last payment because in 1991 he informed Mr. Breeden that he was out of money and could no longer afford to pay him. Mr. Celia, however, acknowledged that Mr. Breeden continued to represent him.
On February 9, 1993, in an attempt to secure payment of his outstanding legal fees, Mr. Breeden had Mr. Celia sign a promissory note in the amount of $41,112.24; this was the exact amount then owed as reflected on the monthly bill. On the next day, Mr. Breeden had Mr. Celia sign a collateral mortgage note in the amount of $500,000.00. Although Mr. Breeden testified that the purpose for executing the notes was to secure payment of his legal fees, he did not contradict Mr. Celia’s testimony that this purpose was never disclosed to him. As to the purpose of these notes, Mr. Celia also introduced into evidence a copy of a letter Mr. Bree-den sent him dated February 10, 1993, which reads:
Dear George:
Please find enclosed a photocopy of the collateral mortgage note, collateral mortgage ahd hand note dated 02/10/93 that you and your wife signed. Same is being forwarded to you for inclusion in your files.
|KThis is also, to confirm that I have suggested that other collateral mortgage notes and collateral mortgages be prepared and filed on the property involved in this litigation.
The litigation referenced in the letter is the St. Bernard, matter.
In August 1994, as noted above, Mr. Breeden represented Mr. Celia in obtaining two settlements in the St. Bernard matter. First, on August 25, 1994, Mr. Celia and the RTC entered into a Receipt, Release and Settlement Agreement, that provided for, among other things, a $3,402,846.57 consent judgment against Mr. Celia and for the dismissal of the claims .between the parties to that agreement in the pending federal proceeding.
Days later, a settlement was reached with two of the bank’s insurance companies. As a result of that settlement, Mr. Breeden received $50,000.00 from the insurance companies. It is conceded that Mr. Celia never directly received any of that sum. Rather, Mr. Breeden applied $40,000.00 of that sum to pay Mr. Celia’s outstanding bills. Particularly, the monthly bill and a disbursement statement reflect that this amount was applied to pay two experts (one a certified public accountant), deposition costs, court costs, an associate’s fees, and $23,888.00 of Mr. Bree-den’s own fees. The remaining $10,000.00 of the settlement sum was placed into Mr. Breeden’s trust account and earmarked for an appeal in the St. Bernard matter involving Mr. Celia’s remaining claims against another bank. That appeal was denied by the federal appellate court in May 1995, and another disbursement statement reflects that sum was applied to pay the costs and legal.'fees associated with that appeal.
To inform Mr. Celia of that unfavorable 'appellate court decision, Mr. Breeden sent Mr. Celia a letter. That letter advised that the appeal was | ¡^unsuccessful and that *1076 the case therefore was over. Particularly, that letter dated May 10,1995, reads:
Dear Clients:
It is my unpleasant duty to enclose for your records the denial of the Fifth Circuit court filed May 4, 1995 following the 5/01/95 hearing.
George, you well know my and Bryon UnKauf s sentiments on this one. I can add nothing except that I look forward to representing you on other matters pending where the outlook is more positive.
Mr. Celia testified that he understood this letter to mean that the attorney-client relationship was terminated as to the St. Bernard, matter. Mr. Breeden, on the other hand, testified that he continued to represent Mr. Celia in that matter as well as others.
In May 1998, Mr. Breeden testified that he contacted Mr. Celia regarding payment of outstanding legal fees and was informed that payment would not be forthcoming. This lawsuit followed.
On May 28, 1998, Mr. Breeden filed his original petition alleging that Mr. Celia is indebted to him for $195,714.69. He further alleged that he was the holder in due course and owner of two promissory notes in the amounts of $41,112.26 and $500,000.00, dated February 9th and 10th, 1993, respectively, executed by Mr. Celia, and payable to Mr. Breeden, and that Mr. Celia’s last payment was made on November 7,1995.
Mr. Celia responded with various exceptions, including prescription, and a general denial of the allegations of the petition. Mr. Celia’s answer alleges that the promissory notes “in fact were drafted by plaintiff, and presented to defendant for the sole purpose of attempting to deprive then existing and future creditors of any efforts to obtain properties formerly owned by defendant as the legal advice of 17plaintiff given to defendant.” Mr. Celia’s answer further alleges that “[pjlaintiff had agreed, after 1992, that legal fees would only be due, and would only be based upon sums which were recovered by plaintiff in the course of representing defendant.”
Thereafter, Mr. Breeden filed two supplemental and amending petitions, increasing the alleged amount that Mr. Celia is indebted to him from $195,714.69 to $1,123,633.00 and adding a claim based on the alleged May 5, 1988 contingency fee contract with Mr. Celia in the St. Bernard matter. These petitions also allege that Mr. Breeden represented Mr. Celia in various other cases since November 10, 1987, and that he withdrew as attorney of record from the remaining two cases on May 21, 1998.
On November 6, 2001, the trial court granted Mr. Breeden’s Voluntary Motion to Partially Dismiss with Prejudice his claim arising out of the $500,000.00 collateral mortgage note. That motion was expressly based on the character of that note, and the “recent changes in the law”' — the Louisiana Supreme Court’s decision in Diamond Services Corp. v. Benoit, 2000-0469 (La.2/21/01), 780 So.2d 367— regarding the enforceability of a collateral mortgage note.
On March 6, 2002, the trial court rendered judgment in favor of Mr. Celia dismissing this action and assessing costs equally to both parties. This appeal followed.

DISCUSSION

Mr. Breeden appeals enumerating the following eight issues for review:
1) The court erred in considering any fact, document, or other matter not offered, introduced, and filed into evidence;
2) the court erred in essence granting the motion in limine;
*1077 |s3) the court erred in concluding that defendants were denied discovery notwithstanding five formal requests;
4) the court erred in interjecting itself in the trial process as often as it did;
5) the court erred in holding that the note was not for a fee since it should have had more documentation;
6) the court erred in holding that the note prescribed;
7) the court erred in holding that the contract prescribed; and
8) the court erred in holding that plaintiff had not carried his burden of proof for the quantum meruit claim.
Although not addressed individually, each alleged error is disposed of by addressing the three theories on which Mr. Breeden seeks to recover attorney’s fees: (1) the promissory notes, (2) the contingency fee contract, and (3) quantum meruit.[4]

PROMISSORY NOTES

The first theory of recovery advanced by Mr. Breeden is based on the two promissory notes issued in February 1993 for $41,112.26 and $500,000.00. Rejecting the promissory note theory, the trial court reasoned:
Defendant, George Celia III, claims that both notes were made on successive days to facilitate protection of his properties from seizure as recommended by plaintiff. There is substance to this claim because at the time defendants’ properties were in danger of foreclosure and if the note had been signed as a fee, there should have been more documentation reflecting this fact. But these arguments will be unnecessary to reach because the note is prescribed. It was signed on February 9, 1993, was a demand note and therefore prescribed on February 9, 1998 ... before suit was filed on the entire amount of the note.
Mr. Breeden contends the trial court erred in finding a lack of sufficient documentation for the $41,112.26 note. That odd figure for which that note was | nissued, he argues, was the particular amount owed as then reflected on the monthly bill. Countering, Mr. Celia emphasizes that the lack of documentation was not the basis on which the trial court relied to reject recovery under the note; rather, as reflected in the reasons for judgment, the trial court relied solely on prescription. Mr. Celia further argues that the trial court correctly concluded the note is prescribed.
Assuming for purposes of our analysis the validity of this promissory note,[5] we nonetheless find, as did the trial court, that Mr. Breeden’s claim to recover under this note is prescribed by the five-year period set forth in La. C.C. art 3498, which provides:
Actions on instruments, whether negotiable or not, and on promissory notes, whether negotiable or not, are subject to a liberative prescription of five years. This prescription commences to run from the day payment is exigible.
As the trial court noted, the $41,112.26 note is a demand note and thus payment became exigible on the date it was issued, February 9, 1993; prescription ran five years later, February 9, 1998, three months before this suit was filed.
*1078 Mr. Breeden argues that prescription was interrupted by Mr. Celia’s $3,000.00 purported payment on November 7, 1995. Conversely, as noted above, Mr. Celia testified that he was certain his final payment to Mr. Breeden was a $5,000.00 payment made in October 1990.
The gist of the issue presented by this argument is whether the purported November 7, 1995 payment was one actually made by Mr. Celia, as Mr. Breeden .J^contends, or was merely a transfer of funds by Mr. Breeden from his trust account to his regular account, as Mr. Celia contends and the trial court found. The significance of this factual distinction is that if this was simply a transfer of funds by Mr. Breeden from one account to another (i.e., a payment to himself), then it was insufficient to constitute an acknowl-edgement.
The jurisprudence holds that “partial payment by a third party constitutes acknowledgement of a debt which interrupts prescription only if such payment has been made with the authority of the debtor.” Landreneau v. Duplechin, 595 So.2d 1230, 1231 (La.App. 3 Cir.1992). “ ‘A creditor, therefore, cannot be made the agent of the debtor to such an extent as to make the act done by him operate as a new promise to himself.’” Guaranty Bank & Trust Co. v. Heiderich, 163 La. 957, 968, 113 So. 161, 164 (1927)(on reh’g). It follows then that if the November 7, 1995 payment was merely a transfer of funds by Mr. Breeden from one account to another, then it did not interrupt prescription on Mr. Celia’s promissory note.
Turning to the facts, Mr. Breeden testified that his routine practice was to keep one-third of every fee payment in his trust account for taxes and to transfer two-thirds of every fee payment to his regular account. According to Mr. Bree-den, the check he issued to himself on November 7th for $2,000.00 (check number “T3694”) was prompted by Mr. Celia’s payment apparently that same day of $3,000.00. Attempting to corroborate that purported payment by Mr. Celia of $3,000.00, Mr. Breeden offered two documents: (a) a journal entry written by one of his staff referencing that payment; and (b) the November 30, 1995 monthly bill referencing that payment. At trial, however, Mr. Breeden acknowledged that he could not produce either a copy of Mr. Celia’s $3,000.00 check or a deposit slip to corroborate that purported payment.
| uWhen questioned regarding his understanding of the reference to the $3,000.00 payment reflected on the November 30, 1995 bill, which reads “11/07/95 Payment to fee balance T3694 — 3,000.00,” Mr. Celia responded that this was a reference to a check drawn from Mr. Breeden’s trust account. Agreeing with Mr. Celia that the November 7, 1995 payment was Mr. Bree-den paying himself with his own trust account funds, the trial court reasoned: “the facts reveal that this payment was made by a check from plaintiffs own escrow account to himself as payee. Defendants’ rightfully contest this as an interruption of prescription, because it was not signed with his clients[’] prior agreement or knowledge and theoretically could be done monthly or yearly to prevent prescription from ever running.” Although the parties offered divergent testimony on this point, the trial court’s adoption of Mr. Celia’s position is not manifestly erroneous.
Alternatively, Mr. Breeden argues that despite his voluntary dismissal of his claim based on the $500,000.00 collateral mortgage note, that note nonetheless has legal relevance. The legal relevance, he argues, is that it secured the $41,112.26 “hand note” that was executed a day earlier (as well as amounts for future legal fees), and its pledge prevented that hand note from prescribing. Mr. Breeden’s at *1079 tempt to transform the $41,112.26 promissory note into a hand note secured 'by the $500,000.00 collateral mortgage and thereby to create a collateral mortgage package poses an ethical violation.
This alleged collateral mortgage package would clearly be a business transaction between the parties — an attorney-creditor and a client-debtor — and would thus trigger the ethical rule regarding such transactions. Rules of Professional Conduct, Rule 1.8. Rule 1.8 requires that an attorney inform the client, advise the client to seek independent legal advice, and obtain the client’s |12written consent. None of those requirements were complied with in this case. Mr. Celia was not informed that the purpose of the notes was to secure Mr. Breeden’s attorney’s fees. Mr. Celia was not advised to consult independent counsel regarding that business transaction. Consequently, Mr. Celia’s consent to create such a collateral mortgage package could not conceivably have been obtained.
At trial, Mr. Breeden did not dispute failing to inform Mr. Celia of the purpose for executing the notes; instead, he simply stated that Mr. Celia was an experienced businessman and understood the purpose of a promissory note. However, “[a] fee agreement between a lawyer and client is not an ordinary business contract.” Joanne Pitulla, Excessive Fees Bite Back, 83-APR A.B.A. J. 82 (1997). We find Mr. Breeden’s collateral mortgage package argument unpersuasive.
Our finding is supported by the trial court’s order dismissing Mr. Breeden’s claim on the $500,000.00 note, which states that “any and -all claims and/or causes of action” that Mr. Breeden has against Mr. Celia on the collateral mortgage note are dismissed with prejudice. Moreover, the $500,000.00 note was not introduced into evidence in this case. That note is thus not relevant. .

CONTINGENCY FEE CONTRACT

Mr. Breeden’s second theory of recovery is based on the purported May 5, 1988 contingency fee contract executed solely in the St-Bernard matter.[6] Pursuant to that contract, Mr. Breeden alleges that he is entitled to a million dollar | ^contingency fee calculated on the “amount saved” — three million plus — as a result of the RTC settlement.[7]
Rejecting the million dollar claim theory, the trial court reasoned:
The million dollar claim is unenforceable for two reasons. The three million plus dollar consent judgment, on which the fee claim is based, was clearly a prearranged settlement agreement wherein plaintiffs were released from any liabilities by transferring the disputed properties to the Resolution Trust Corp. The papers signed were merely the method used to facilitate the agreement. In addition, any fee due for this- arrangement, regardless of how much it benefited the defendants, was subject to a three year *1080 prescriptive period which began to run on May 10, 1995 when plaintiff informed defendants that all claims in the St. Bernard matter were terminated, as was his representation of them in that matter. Prescription for the attorneys fees then prescribed in three years or on May 10, 1998, some 18 days prior to filing suit.
Assuming for purposes of our analysis that a valid contract exists and that a million dollar contingency fee claim exists thereunder, we nonetheless find, as did the trial court, that Mr. Breeden’s claim to recover on that basis is prescribed by the three-year period set forth in La. C.C. art. 3494 for actions seeking recovery of professional fees.
The three-year period for seeking recovery of attorney’s fees under Article 3494 (former La. C.C. art. 3538) has been held to commence from the date that services were rendered. Brod Bagert, Professional Law Corp. v. D’Hemecourt, 95-1036 (La. App. 5 Cir. 3/26/96), 672 So.2d 998 (noting long history of this rule and citing Howe’s Heirs v. Brent (1827), 6 Mart., N.S. 248, and Lyons v. Hall, 90 So.2d 519 (La.App. 2 Cir.1956)). The jurisprudence, however, has recognized that the date on which legal services were rendered is not always the only factor to [ 14be considered in determining when prescription commences to run. Other factors include: (i) the purpose of the attorney’s employment, when and if that purpose was accomplished, and when and if the services were completed; (ii) whether the services were performed on a contingency fee basis; and (iii) when the employment was terminated. Succession of Buvens, 373 So.2d 750, 752 (La.App. 3 Cir.1979). The latter factor, however, is “[pjerhaps the most important factor.” Id.
Applying those factors to the instant case, we conclude, as did the trial court, that the three-year prescriptive period commenced to run from the date the employment as to the St. Bernard matter was terminated. Although Mr. Breeden argues that there was a continuous course of representation with the St. Bernard matter being the largest case and that prescription did not begin to run until he formally withdrew in May 1998 from the two remaining cases, this argument overlooks that the St. Bernard matter was carved out for special treatment on a contingency fee basis. Logically, it follows then that actions taken by Mr. Breeden in representing Mr. Celia in the other matters are not relevant in determining when prescription commenced to run on his contingency fee claim in the St. Bernard matter.
In finding this claim on the contingency fee claim prescribed, the trial court relied on the May 10, 1995 letter Mr. Breeden sent Mr. Celia as marking the termination of the relationship and the commencement of prescription. It follows then that the crux of this prescription issue is the meaning ascribed to that May 10, 1995 letter. As noted, that letter was sent after Mr. Celia’s remaining claims in the Bernard matter against another bank were lost in the federal appellate court. That letter closed with the statement: “I can add nothing except that I look forward to representing you on other matters pending where the outlook is more positive.” Mr. Celia construed that statement to mean that Mr. Breeden’s representation of him in that matter was terminated. On the other hand, Mr. Breeden testified that all cases have “tails” — things that have to occur after an appellate court has ruled — and that he continued to represent Mr. Celia in that matter, as well as others, thereafter. Mr. Breeden further testified:
I thought at that particular time the court case was over. He had lost in the 5th Circuit Court of Appeal, but I continued to represent him on other things such as Elmwood and one or two other *1081 cases. We had gotten the 5th Circuit’s opinion and we lost.
Although another attorney might have construed the letter as simply a cover letter accompanying the unfavorable appellate court decision, a client, like Mr. Celia, could reasonably construe the letter to mean the relationship was terminated as to that particular case. Indeed, at that point, the purpose of Mr. Breeden’s employment as to the St Bernard matter was accomplished; in August 1994, the two settlements were executed, and the appeal was denied in May 1995. We thus conclude that the trial court was not manifestly erroneous in finding that as to the St Bernard matter the attorney-client relationship between the parties terminated on May 10, 1995, and the three-year period elapsed on May 10, 1998, days before the instant suit was commenced.[8]

\,«QUANTUM MERUIT

The third and final theory of recovery advanced by Mr. Breeden is quantum meruit An attorney who seeks to recover on a quantum meruit basis must prove the value of his services and the extent of his expenses. Johnson v. Insurance Company of North America, 27,847, p. 4 (La.App. 2 Cir. 1/24/96), 666 So.2d 1286, 1289. Stated otherwise, an attorney must establish both the amount of fees earned and the reasonableness of such fees. Drury v. Fawer, 590 So.2d 808, 811 (La.App. 4 Cir. 1991). An attorney’s failure of proof will preclude recovery on a quantum meruit basis. See Johnson, 27,847 at p. 5, 666 So.2d at 1290; Sanders v. Federal Apartments Ltd. Partnership, 31,562 (La.App. 2 Cir. 2/24/99), 733 So.2d 45.
Rejecting the quantum meruit theory of recovery, the trial court reasoned:
Excluding the prescribed claims, counsel for defendants on at least five occasions formally requested detailed information on work performed and hours used to compute any amounts claimed. Plaintiff was unable to comply with this request to his detriment, because his records were not kept with the accuracy required. The plaintiff was thus unable to sustain his burden of proof in this matter.
Mr. Breeden argues that the trial court erred in holding that he failed to carry his burden of proof for recovery on a quantum meruit basis.[9] Mr. Breeden argues that the monthly bills coupled with his daily time log, detail every aspect of his representation of Mr. Celia in all the cases and thus satisfied his burden of proof. Mr. Breeden further argues that there is no rule requiring an attorney to keep six separate accounts if he handles six separate cases for the same client.
117Mr. Breeden’s argument overlooks the inherent overlap between his prescribed claims on the contingency fee contract and the promissory note and his quantum me-ruit claim. The record reflects that at trial Mr. Breeden focused his efforts primarily on proving his claim for fees on the *1082 largest case, the St Bernard, matter. In so doing, he failed to make a record as to the particular amounts due on the other matters. Based on our review of the record, we find no error in the trial court’s conclusion that Mr. Breeden’s failure to prove what services he provided in the other matters and what time he spent performing such services precludes his recovery.[10]
In finding those monthly bills and the contemporaneously prepared time sheets from which those bills were prepared insufficient to satisfy Mr. Breeden’s burden of proof, the trial court analogized this to a merchant’s attempt to recover on an open account by merely presenting a bill for a certain sum without an itemization of what the customer purchased for that sum. We, like the trial court, decline to undertake the accounting task of reconciling the contemporaneous time sheet with the monthly bills covering all matters.[11] We thus conclude that Mr. Bree-den failed to prove his entitlement to any additional fees over and above the amounts he has already collected.[12]
| ^DECREE
For the foregoing reasons, we affirm the judgment of the trial court and assess all costs of appeal on appellant, Mr. Breeden.
AFFIRMED.

. For ease of reference, we refer to the defendants singularly as Mr. Celia. Although Mrs. Celia was not a party to certain agreements and although she initially disputed her responsibility for the attorney's fees at issue, the parties ultimately agreed that the legal services were provided to both Mr. and Mrs. Celia. That issue is thus not before us.

. Copies of those monthly bills, dated December 31, 1987 through March 31, 1998, are in the record. Although the trial court allowed those monthly statements into evidence, the court did not accept those statements as proof of any facts.

. Due to the impracticality of knowing the "amount saved” on which to calculate the contingency fee under subpart a of the contract until the end of the case, Mr. Breeden contends that it was proper to bill hourly during the course of the relationship. At the end of the case, he further contends that the contract allowed him to collect under subpart c the larger amount of the hourly fee or contingency fee, giving a credit for the hourly fees previously paid. As noted elsewhere, no effort is made to calculate what that credit would have been.

. Some of the issues, such as the trial court's alleged interjection into the proceeding, were not briefed and therefore we do not address them. Uniform Rules of Louisiana Courts of Appeal, Rule 2-12.4.

. We note, yet do not reach, Mr. Celia’s ethical argument challenging the validity of that note given Mr. Breeden’s failure to comply with the disciplinary rule governing engaging in a business transaction with a client. We, however, do reach this issue in connection with Mr. Breeden’s argument regarding the creation of a collateral mortgage package, discussed elsewhere in this opinion.

. Mr. Celia contests the validity of the contingency fee contract itself. That document is a two-page agreement. Only page one is dated, yet only page two is signed. Mr. Celia does not contest his signature, but he does contest the terms set forth on page one. Particularly, he stresses that the term "saved” is neither defined in the document, nor was it ever explained to him.

. That figure is arrived at by reducing the three million plus amount for which Mr. Celia confessed judgment ($3,402,846.57) by the sale price of the property ($534,200.00), resulting in a net savings of approximately three million dollars ($2,868,846.65). The net "saving” allegedly occurred because without the settlement Mr. Celia would have been required to pay a deficiency judgment in that amount. Applying the forty percent contingency fee rate to that three million dollars net saving figure is how Mr. Breeden arrives at the million dollar contingency fee he claims in this case.

. Mr. Breeden again relies on the alleged November 7th payment, discussed above, as interrupting prescription. We, like the trial court, find no merit to that contention; for the reasons discussed above, that payment by Mr. Breeden to himself was insufficient to interrupt prescription.

. Given that the trial court's decision was based on Mr. Breeden’s failure to meet his burden of proof, not on his failure to comply with discovery requests, Mr. Breeden's alternative arguments regarding the trial court's reliance on his failure to comply with the discovery requests and motion in limine are unpersuasive. Regardless, the trial court declined to rule on Mr. Celia's pre-trial motion in limine; instead, the court indicated it would rule on such evidentiary issues as presented at trial. It follows then, as Mr. Celia contends, that Mr. Breeden’s arguments regarding the motion in limine are moot.

. According to Mr. Breeden’s estimates, he spent approximately 1,700 hours handling all the matters and 1,200 of those hours handling the St. Bernard matter. The final monthly bill in the record dated March 31, 1998 reflects the balance due for fees and costs in all matters of $196,114.69.

. Nor do we find persuasive Mr. Breeden’s argument that Mr. Celia’s failure to object to the monthly bills precludes him from challenging such bills based on detrimental reliance.

. Our finding likewise renders it unnecessary for us to address Mr. Breeden's claim for additional attorney’s fees incurred in pursuing this claim under either the contingency fee contract or the open account statute.