948 So.2d 353 (2007)
BELL FENCE & GALVANIZING CO., INC./CENTRAL FENCE, Plaintiff-Appellant
v.
Brad BOND d/b/a Bond Fence Company, Defendant-Appellee.
No. 41,820-CA.
Court of Appeal of Louisiana, Second Circuit.
January 24, 2007.
Randal B. Tannehill, Pineville, for D. Beau Sylvester, Appellant.
Larry Arbour, for Appellee.
Before WILLIAMS, GASKINS and CARAWAY, JJ.
GASKINS, J.
The plaintiff, Bell Fence & Galvanizing Co., Inc./Central Fence ("Bell Fence"), seeks reversal of the trial court's judgment granting the peremptory exception of prescription filed by the defendant, Brad Bond. For the following reasons, the trial court judgment is affirmed.

FACTS
Bell Fence is a supplier of fencing materials. Brad Bond operated a fence building business and bought supplies from Bell Fence. On May 23, 2005, Bell Fence filed a suit on open account alleging that Mr. Bond was indebted to it for the outstanding sum of $11,272.71.
In answering the petition, Mr. Bond admitted he did have an open charge account with the plaintiff until 2001, but claimed he had paid in full all of those charges. Mr. Bond further stated that he had not had an open account with the plaintiff since 2001, but instead paying cash for all purchases since then. Mr. Bond pleaded the affirmative defenses of payment and prescription.
*354 On January 6, 2006, Mr. Bond filed a peremptory exception of prescription which was heard on January 11, 2006. At the hearing, Mr. Bond submitted into evidence a copy of Bell Fence's customer activity report on his account reflecting all activity on the account between January 1, 1999, and December 31, 2003. The report was purportedly admitted to show that the only items for which a balance was currently due were purchased no later than August of 2001.
The account reflects Mr. Bond's purchasing activity between May and August of 2001 totaling $10,651.23, which Bell Fence claims is still outstanding. The report also reflects that from late 2001 until December 2003, Mr. Bond continued to purchase materials from Bell Fence totaling $140,174.07. Each purchase is identified by a specific invoice number and the individual items purchased under that invoice. In the "Balance Due" column of the report, none of these post-August 2001 invoices reflect any unpaid balance. Toward the end of the report, 39 Receipt on Account (ROA) payments are listed, dating from December 7, 2001 to December 8, 2003. Each payment listed identifies the invoice number or numbers to which the payment was credited. A review of those invoice numbers indicates that each payment was for items invoiced anywhere from a week to two years before the payment was made. The last page of the report lists a balance due of $10,651.23, the amount accrued including and prior to August 2001.
Mr. Bond testified that he operated his fence contracting business between 1999 and 2004. During this time, he purchased items from Bell Fence. The company allowed him to purchase the materials on a credit basis. However, Mr. Bond was informed that due to the large outstanding balance on his account, he would no longer be extended credit. Any materials he obtained from that time forward were paid for at the time of purchase. He confirmed that he continued to do business with Bell Fence until he quit the fence contracting business in 2004.
Bell Fence presented the testimony of Clint Randolph Clinton, a regional sales manager for the company between 1999 and 2004. Mr. Clinton confirmed Mr. Bond's testimony that the company initially extended credit to Mr. Bond by allowing him to make purchases on open account. While Mr. Clinton could not testify as to exactly when the company stopped extending credit to Mr. Bond, he thought that it was either in 2001 or 2002. While Mr. Clinton stated that exceptions were sometimes made to extend credit to non-charging customers, he had no specific recollection of it being done on Mr. Bond's account. Mr. Clinton also testified that Mr. Bond acknowledged to him on numerous occasions that he owed Bell Fence some money, but that Mr. Bond disputed the amount. Mr. Clinton could not recall the dates of these acknowledgments, but was confident that Mr. Bond had done so as late as 2003.
Mr. Bond took the stand on rebuttal and refuted that he had ever acknowledged owing any debt to Bell Fence.
At the conclusion of the hearing, the trial court granted the exception of prescription based on its finding that the open account was terminated in 2001 when Mr. Bond was required to pay for all materials at the time of purchase. The trial judge signed a judgment to that effect in open court.
Bell Fence filed a motion for new trial arguing that the judgment was contrary to the law and the evidence. The plaintiff contended that charges were made on the account in 2004 as reflected on the accounts receivable report previously filed *355 into the record as a supplement to the original petition. The plaintiff argued that Mr. Clinton was not aware that, as late as 2004, employees allowed Mr. Bond to receive merchandise and pay later. At the hearing on the motion, the plaintiff proffered the affidavit of the president of Bell Fence to show that Mr. Bond was allowed to charge on his account after 2001. The plaintiff argued that this evidence was not known to Mr. Clinton and was not discovered until after trial. The trial court denied the motion for new trial on the basis that this evidence, if accurate, was available to the plaintiff at the time of the hearing on the exception. Bell Fence appealed.

DISCUSSION
The plaintiff argues that the trial court erred in concluding that an open account ceased to exist in 2001, because the customer activity report shows that Mr. Bond was extended credit less than three years prior to the filing of the suit on open account. This argument is without merit.
La. C.C. art. 3494 provides for a three-year liberative prescriptive period for an action on an open account. Prescription of the balance due on an open account begins to run from the date of the last credit entry on account. Ritchie Grocer Co. v. Dean, 182 La. 518, 162 So. 62 (1935); Frierson Co., Inc. v. Murray, 190 So. 132 (La.App. 2d Cir.1939). However, a debtor on an open account may impute his payments to specific items on that account. Freiberg v. Rembert, 213 So.2d 104 (La. App. 1st Cir.1968); Electrical Supply Co. v. Eugene Freeman, Inc., 178 La. 741, 152 So. 510 (1934). Such imputed payments do not interrupt the tolling of prescription on the balance of the account. LeBoeuf v. Riera, 176 So.2d 216 (La.App. 4th Cir. 1965). In other words, when payment is made for specific invoices, whether as a result of the extension of credit or not, that payment does not serve to interrupt prescription on the balance of the account. See also Dear v. Mabile, 93-1188 (La.App. 1st Cir. 5/20/94), 637 So.2d 745; Farlee Drug Center, Inc. v. Belle Meade Pharmacy, Inc., 464 So.2d 802, 805 (La.App. 5th Cir.1985); and Fleet Tire and Service v. Schwegmann Brothers Giant Super Markets, Inc., 408 So.2d 54 (La.App. 4th Cir. 1981).
The record clearly reflects that the balance due sought by the plaintiff is for charges made no later than August 31, 2001. Suit was filed on May 23, 2005, more than three years later. Since the record evidences no general payments on the account, but only payments specifically credited to particular invoices, there was no interruption of prescription as to the charges made through August 2001. Further, the defendant testified that he did not acknowledge the debt and the trial court apparently found his testimony to be credible. There is no showing that the trial court was manifestly erroneous or clearly wrong in this finding. Accordingly, we find no error in the trial court's granting of the exception of prescription.

CONCLUSION
For the foregoing reasons, the judgment of the trial court granting Brad Bond's peremptory exception of prescription and dismissing the claims of Bell Fence is hereby affirmed. The costs of this appeal are assessed to Bell Fence.
AFFIRMED.