| | | |
|---|---|---|
| THE KULLMAN FIRM, A PROFESSIONAL LAW CORPORATION | * | NO. 2024-CA-0138 |
| | * | |
| | | COURT OF APPEAL |
| VERSUS | * | |
| | | FOURTH CIRCUIT |
| INTEGRATED ELECTRONIC | * | |
| TECHNOLOGIES, INC. | | STATE OF LOUISIANA |

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2019-03556, DIVISION "F-14"
Honorable Jennifer M. Medley,
\* \* \* \* \* \*
**Judge Rachael D. Johnson**
\* \* \* \* \* \*
(Court composed of Judge Rosemary Ledet, Judge Tiffany Gautier Chase, Judge Rachael D. Johnson)

Guy Earl Wall
Jonathan R. Cook
Sara M. Lewis
WALL COOK & LEWIS, L.L.C.
540 Elmwood Park Boulevard
Harahan, LA 70123

     COUNSEL FOR PLAINTIFF/APPELLEE

Jesse B. Hearin, III
ATTORNEY AT LAW
155 Robert Street, Suite 238
Slidell, LA 70458

Jack Edward Morris
JACK E. MORRIS, ATTORNEY AT LAW, LLC
4051 Veterans Memorial Boulevard
Suite 208
Metairie, LA 70002

     COUNSEL FOR DEFENDANT/APPELLANT

**EXCEPTION OF PRESCRIPTION
OVERRULED; AFFIRMED**
**September 27, 2024**

Appellant, Integrated Electronic Technologies, Inc. ("IET"), seeks review of the July 6, 2023 district court judgment, rendered in conformity with a jury verdict, ordering IET to pay the Appellee, the Kullman Firm, APLC ("Kullman"), $251,239.59, plus interest thereon, reasonable attorneys' fees and costs. IET additionally seeks review of the district court's rulings denying IET's motion for mistrial and its motion for new trial. Lastly, IET raises an exception of prescription on appeal. Upon review of the applicable facts and law, we affirm the district court's judgment and rulings. IET's exception of prescription is overruled.

## Facts and Procedural History

This appeal involves a dispute between IET, a satellite cable television installation company, and Kullman over unpaid attorneys' fees IET owed to Kullman for its defense of IET in federal court. In 2011, Don Gantt, IET's founder and owner, retained Kullman to defend IET in a lawsuit by satellite installation technicians filed in the United States District Court for the Eastern District of Louisiana ("Eastern District"). It is undisputed that prior to the drafting of Kullman's engagement letter, Mr. Gantt met with Ernest Malone— a Kullman

shareholder and the Vice-President of the Kullman firm—to discuss the Eastern District lawsuit, anticipated similar lawsuits against IET, and Kullman's potential representation of IET. Kullman's engagement letter contained a provision that IET's individual invoices would become past-due after 60 days. It is also undisputed that Kullman associate, Ben Banta, advised Mr. Gantt that the amounts of Kullman's invoices would vary, and sometimes spike. The Kullman firm advised Mr. Gantt that defense of collective action lawsuits is labor-intensive and costly.

Subsequently, a second lawsuit was filed against IET by technicians in the United States District Court for the Southern District of Alabama, which was later transferred to the Eastern District (these two lawsuits are collectively referred to as "the Lawsuits" herein). In the Lawsuits, some of IET's satellite installation technicians filed collective actions under the Fair Labor Standards Act ("FLSA") against IET and Dish— for which IET was a contractor— alleging both companies violated the FLSA and owed wages, benefits, and other damages to the technicians as a result of incorrectly classifying them as independent contractors rather than as employees.

Kullman represented IET from 2011 to August 16, 2016, when a settlement was approved by the Eastern District. IET, however, became delinquent in paying its attorneys' fees to Kullman numerous times throughout the course of the representation. Moreover, prior to and following the settlement, IET began questioning Kullman's billing practices and the validity of its invoices. Kullman's invoices remained unpaid following the issuance of its final invoice to IET.

Kullman initially retained counsel to collect IET's past due payments, but to no avail. It later filed against IET on April 2, 2019. Kullman pleads that IET

2

retained its firm in 2011, agreeing to pay hourly billing rates on an open account. It pleads that from October 2011 through February 18, 2015, IET paid Kullman's monthly invoices— ranging anywhere from $149.20 to $41,133.23— in full. However, Kullman alleges that a second February 18, 2015 invoice issued to IET for $30,840 was only partially paid, leaving a balance of $26,282.69. Kullman states that IET failed to pay any further invoices, the last of which was issued on November 9, 2016.

Following a four-day jury trial, a jury found in favor of Kullman; and the district court rendered a July 6, 2023 judgment in conformity with the jury verdict. The judgment ordered IET to pay $251,239.59, with interest on any accounts that are 60 days past due, Kullman's attorneys' fees, and costs. The district court later denied IET's motion for new trial on December 7, 2023, and ordered IET to pay $159,558.97 in reasonable attorneys' fees and $34,103.26 in costs. This timely appeal followed. After this appeal was lodged, IET filed an exception of prescription in this Court.

**Assignments of Error**

IET raises four assignments of error, alleging the district court erred in: 1) awarding attorneys' fees and costs in favor of Kullman and against IET; 2) denying IET's motion for a mistrial due to prejudicial misconduct during voir dire; 3) granting Kullman's motion in limine to exclude evidence of the unreasonableness of attorney fee invoices; and, 4) denying IET's motion for new trial.

In addition to IET's assignments of error, as noted above, IET filed an exception of prescription in this Court. We first address IET's exception of prescription.

3

## Exception of Prescription

On appeal, IET excepts to Kullman's petition on the grounds of prescription, pursuant to La. Code of Civ. Proc. art. 2163.[1] IET avers that Kullman's claims for payments due on an open account prior to April 2, 2016, prescribed because there is a three-year prescriptive period for open account claims under La. Code of Civ. Proc. arts. 3494(1) and 3495, which state in pertinent part:

> La. Civ. Code art. 3494
>
> The following actions are subject to a liberative prescription of three years:
>
> (4) An action on an open account
>
> La. Civ. Code art. 3495
>
> This prescription commences to run from the day payment is exigible. It accrues as to past due payments even if there is a continuation of labor, supplies, or other services.

IET argues that Kullman's claims for payment based on unpaid invoices issued between February 18, 2015, and April 2, 2016, became exigible after nonpayment and, therefore, prescribed within three-years of the respective invoice dates. There were 13 invoices issued during this time period, including the

---

[1] La. Code of Civ. Proc. art. 2163 provides:

> A. The appellate court may consider a peremptory exception filed for the first time in that court if the exception is pleaded prior to a submission of the case for a decision and if proof of the ground of the exception appears of record.
>
> B. If the ground for the peremptory exception pleaded in the appellate court is prescription or peremption, the plaintiff may demand that the case be remanded to the trial court for trial of the exception.

aforementioned partially paid February 18, 2015 invoice. IET contends that "[p]rescription of the balance due on an open account begins to run from the date of the last credit entry on account." *Bell Fence & Galvanizing Co./Cent. Fence v. Bond*, 41,820, p. 4 (La. App. 2 Cir. 1/24/07), 948 So.2d 353, 355 (citing *Ritchie Grocer Co. v. Dean*, 182 La. 518, 162 So. 62 (1935); *Frierson Co., Inc. v. Murray*, 190 So. 132 (La. App. 2d Cir.1939)). Pursuant to Kullman's engagement letter, Kullman reserved the right to charge interest "on any accounts that are 60 days past due"; and the district court awarded Kullman contractual damages under this provision. Therefore, according to IET, Kullman's claims for payment became exigible within 60 days of the issuance of each invoice. IET contends because it last made a payment towards Kullman's second-issued February 18, 2015 bill, the majority of Kullman's claims for payment of its invoices prescribed.

Kullman responds that prescription on a client's legal invoices cannot run while a lawyer's representation of the client is ongoing. It contends that IET's argument contradicts "Louisiana jurisprudence holding that prescription does not begin to run on an attorney's invoice to his client until the representation in the underlying litigation has ended." *Haas v. Estate of Ledoux*, 427 So.2d 12, 13-14 (La. App. 3d Cir. 1983); *Garden Hill Land Corp, v. Cambre*, 354 So.2d 1064, 1068 (La. App. 4th Cir. 1978); *Hargrove, Guyton, Van Hook and Ramey v. Blanchard,* 216 So.2d 127, 130-31 (La. App. 2d Cir. 1969); *Mouton, Champagne & Colomb v. Bourgeois*, 208 So.2d 546, 549-50 (La. App. 3d Cir. 1968); *Lyons v. Hall*, 90 So.2d 519, 522 (La. App. 2d Cir. 1956). Kullman further contends that if IET is correct, this would have a "chilling and potentially detrimental effect on clients."

IET counters that Kullman's reliance upon outdated cases to support its argument that it could not sue IET while still representing IET is misplaced. It notes that Kullman's cited cases were decided before the revision of articles 3494 and 3495 on January 1, 1984. IET maintains that under the current La. Civ. Code art. 3495, prescription commences to run as to past due payments "even if there is a continuation of labor, supplies, or other services," as in the instant matter.  Also, it argues that Kullman had the right to move to withdraw as counsel in the federal litigation, but it did not.  We disagree.

A peremptory exception generally raises a purely legal question. *Metairie III v. Poche' Const., Inc.*, 10-0353, p. 3 (La. App. 4 Cir. 9/29/10), 49 So.3d 446, 449. An exception of prescription is designed to stop the prosecution of stale claims. *Prevo v. State ex rel. Dep't of Pub. Safety & Corr. Div. of Prob. & Parole*, 15-0823, p. 4 (La. 11/20/15), 187 So.3d 395, 398 (citation omitted). The exceptor bears the burden of proof, unless it is evident on the face of the proceedings that the claim has prescribed, at which point the burden shifts to the plaintiff to show that the matter has not prescribed. *Id.*

"Statutes regulating prescription are strictly construed against prescription and in favor of the obligation sought to be extinguished." *Wells Fargo Fin. Louisiana, Inc. v. Galloway*, 17-0413, p. 9-10 (La. App. 4 Cir. 11/15/17), 231 So.3d 793, 801 (citation omitted). "The applicable prescriptive period is determined by the character of the action pled in the petition. *Id.*, 17-0413, p. 10, 231 So.3d at 801.  As stated above, the applicable prescriptive period is three years from the date the claim became exigible.

"Exigible" under La. Code Civ. Proc. art. 3494 has been interpreted to mean "requireable" and "demandable."  See *Orsot v. Acadian Ambulance Serv., Inc.*, 19-

6

863, p. 8 (La. App. 3 Cir. 7/15/20), 304 So.3d 487, 493, and *Ledoux v. City of Baton Rouge/Par. of E. Baton Rouge*, 99-2061, p. 5 (La. 2/29/00), 755 So.2d 877, 879-80. The prescriptive period on an open account runs from the date of the last purchase or payment. *Touro Infirmary v. Am. Mar. Officer*, 09-0696, 09-0314, p. 13 (La. App. 4 Cir. 1/7/10), 34 So.3d 878, 886 (citation omitted). "However, when the open account arrangement between the parties involves the rendition of professional services, as in this case, other considerations may influence the date a debt becomes exigible." *Blanchard v. Cors & Bassett*, 12-0939 (La. App. 1 Cir. 4/11/13), 2013 WL 1491270, at *1 (unpublished) (citing *Evans-Graves Engineers, Inc. v. Cunard*, 95-1035 (La. App. 1 Cir.12/15/95), 665 So.2d 794, 796; *Mid-South Analytical Labs, Inc. v. Jones, Odom, Spruill & Davis, LLP*, 40,089 (La. App. 2 Cir.9/23/05), 912 So.2d 101, 106-08).

This Court has held that the three-year period for seeking recovery of attorneys' fees, pursuant to article 3494, commences from the date that services were rendered. *Breeden v. Cella*, 02-0972, p. 13 (La.App. 4 Cir. 11/26/02), 832 So.2d 1072, 1080 (citations omitted). This Court further noted that Louisiana jurisprudence considers additional factors in determining when prescription commences to run: (i) the purpose of the attorney's employment, when and if that purpose was accomplished, and when and if the services were completed; (ii) whether the services were performed on a contingency fee basis; and (iii) when the employment was terminated. *Id*., 02-0972, pp. 13-4, 832 So.2d at 1080 (citing *Succession of Buvens*, 373 So.2d 750, 752 (La.App. 3 Cir.1979)). "The latter factor, however, is '[p]erhaps the most important factor.'" *Id*., 02-0972, pp. 13-4, 832 So.2d at 1080.

7

In applying the *Breeden* factors to the instant matter, we note that Kullman rendered services for IET from 2011 through August 16, 2016. The purpose of Kullman's employment was to defend IET in the Lawsuits, which it accomplished by settling the Lawsuits resulting in the termination of the litigation in August 2016. The services were not performed on a contingency fee basis; instead, the parties agreed that Kullman would bill IET monthly at various applicable hourly rates for the work Kullman's respective associates and Mr. Malone performed. Lastly, Kullman's employment was terminated on August 2016, when the Eastern District approved the settlement. We find that the application of the *Breeden* factors militates towards finding that prescription did not commence to run until August 2016.

Attorneys are fiduciaries to their clients and their conduct in Louisiana is bound by the Louisiana Professional Rules of Conduct. The client-attorney relationship is a unique professional relationship and is distinguishable from those cited in the cases relied upon by IET, which do not involve attorney-client open accounts. Under the unique facts presented, we find that Kullman's claims became exigible on August 16, 2016, when the Eastern District approved the settlement of the Lawsuits and Kullman ceased representing IET.[2] The instant lawsuit was filed on April 2, 2019, within three years of August 16, 2016. Therefore, IET's exception of prescription is overruled. We now turn to discuss IET's four assignments of error.

**Error in Awarding Attorneys' Fees and Costs**

---

[2] Furthermore, comment (a) of the 1983 revision comments of La. Civ. Code art. 3495 states that current art. 3495 does not change the law. Thus, if there is no change in the substance of the law, the pre-1983 cases cited by Kullman are still applicable when determining when attorneys' fees become demandable.

IET contends that had it prevailed on its exception of prescription, a reduction of the district court's July 6, 2023 Judgment, awarding attorneys' fees and costs, as well as the December 7, 2023 Judgment, assessing those costs, would be required as those awards would be erroneous and necessitate reversal. IET avers that no contract authorizes the award of attorneys' fees in favor of Kullman. Kullman is not entitled to recovery of attorneys' fees under the open account statute, La. Rev. Stat. 9:2781(A), because it failed to correctly set forth the amount owed in its demands to IET by including the prescribed claims. However, as discussed above, having denied IET's exception of prescription, we pretermit this assignment of error.

**Motion in Limine**

IET avers that the district court erred in granting Kullman's pre-trial motion in limine preventing the jury from considering evidence relating to its bills that IET had already paid. We do not find that the district court abused its vast discretion.

The May 1, 2023 transcript reflects that Kullman moved to exclude any evidence regarding IET's payment of Kullman's invoices, issued between October 26, 2011 and January 27, 2015, totaling $276,279.01. Kullman alleged the paid invoices were irrelevant to the underlying matter. IET, however, argued that Mr. Gantt agreed to paying $5,000 per month, or increments thereof, to Kullman consistent with the parties' engagement agreement, including in sums of anywhere from $10,000 to $70,000. IET further asserts that Mr. Gantt did not sign-off on Kullman's invoices and did not approve all of Kullman's invoices because the invoices failed to detail the amount of time Kullman spent on each task. Kullman, IET argues, applied Mr. Gantt's payments to its invoices as it wished. IET further

9

contends that the exclusion of the subject invoices would hinder IET's establishment that Kullman charged IET outrageous sums.

Kullman's response was that IET's or Mr. Gantt's internal accountant applied IET's payments for Kullman's invoices to the oldest unpaid invoices, just as Kullman did. It further argued that the lack of specificity in its initial invoices is irrelevant because Kullman adjusted the format of its later issued invoices and revised the earlier issued invoices to accommodate Mr. Gantt's requests.

The district court granted Kullman's motion, reasoning that there would be juror confusion if Kullman's paid invoices were introduced. Motions in limine are reviewed by appellate courts using the abuse of discretion standard of review, which gives district courts "great discretion" in their consideration of the motion. *Noel v. Noel*, 15-37, p. 15 (La. App. 3 Cir. 5/27/15), 165 So.3d 401, 413. Moreover, pursuant to La. Code Evid. art. 402, unless otherwise provided by law, all relevant evidence is admissible. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." La. Code of Evid. art. 401. Additionally, even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. La. Code Evid. art. 403.

In consideration of the applicable law and the facts presented, we find that the district court did not abuse its discretion. The introduction of paid invoices in a

trial for unpaid fees is irrelevant and could reasonably have led to the jury being confused or misled. This assignment of error is without merit.[3]

## Motion for Mistrial

IET asserts that during voir dire a juror tainted the jurors who were in her panel—consisting of four jurors and two alternates— who heard her say she knew Mr. Malone, who she babysat for, and vouched for his trustworthiness.

In the instant matter the district court struck the potential juror, Juror 6, for cause, after Kullman attempted to rehabilitate her. During voir dire of the second panel of jurors, Juror 6 stated she knows Kullman's corporate representative, Mr. Malone. She used to babysit his children, is friends with his daughter and is his neighbor. When questioned by Kullman's counsel as to whether her relationship with Mr. Malone would impact her ability to be a fair juror, she responded, "I would tend to think he is an honorable, trustworthy and honest man, because I know him." She went on to state that her father was friends with one of Kullman's founders. She stated, in response to questioning by Kullman's counsel, that she found Mr. Malone trustworthy, and further that she considered that Mr. Malone kept promises to her as evidenced by his paying her each time she babysat. The district court struck the prospective juror for cause.

The record reflects that IET did not object at any point during the voir dire; rather it waited until the next day, after the jury was empaneled, to move for a

_____

[3] We note that IET did not proffer the excluded invoices until the hearing was held on its motion for new trial.

mistrial. Counsel for IET asserted that IET was unable to get a fair trial as a result of the stricken juror vouching for Mr. Malone. Counsel asserted that Kullman's follow-up questions for Juror 6, led her to make prejudicial statements about Mr. Malone's trustworthiness. Counsel for IET asserted that Juror 6 told her fellow potential jurors that Mr. Malone was a great guy who they should trust. In denying the motion, the district court noted that Juror 6 was stricken and it did not find that the jury was tainted. Kullman further asserts that the district court gave a curative instruction to the jury that information given during voir dire, including comments from other potential jurors, was not evidence and could not be considered.

A mistrial is a drastic remedy that should solely be granted when an "error results in substantial prejudice sufficient to deprive a party of any reasonable expectation of a fair trial." *Gotch v. Scooby's ASAP Towing, LLC*, 19-0030, p. 5 (La. 6/26/19), 285 So.3d 459, 463. Pursuant to La. Code Civ. Proc. art. 1631, district courts on their own motion, or on the motion of any party, following a hearing, have vast discretion in determining whether to grant a mistrial, since mistrials are not a matter of right. Therefore, appellate courts may not disturb a district court's denial of a motion for mistrial absent a showing of an abuse of that discretion. *Gotch*, 19-0030, p. 5, 285 So.3d at 463.

This Court has specified that in civil cases, motions for mistrial should be granted when, before the trial ends and the judgment is rendered, the trial judge determines that it is impossible to reach a proper judgment because of some error or irregularity. *Searle v. Travelers Ins. Co.*, 557 So.2d 321, 323 (La. App. 4th Cir. 1990). So too should a mistrial be granted "when no other remedy would provide relief to the moving party, including 'proof of prejudicial misconduct occurring during a jury trial which cannot be cured by admonition or instructions to the

12

jury.'" *Chalmette Retail Ctr., L.L.C. v. Lafayette Ins. Co.*, 09-0217, p. 34-5 (La. App. 4 Cir. 10/16/09), 21 So.3d 485, 507 (quoting *Boutte v. Kelly*, 02-2451, p. 26 (La. App. 4 Cir. 9/17/03), 863 So.2d 530, 549). "In the analogous area of mistrials in criminal law, we have emphasized that a party seeking a mistrial must make a 'clear showing of prejudice' and have consistently held 'a mere possibility of prejudice is not sufficient.' " *Gotch*, 19-0030, p. 5, 285 So.3d at 463 (quoting *State v. Ducre*, 01-2778 (La. 9/13/02), 827 So.2d 1120, 1120).

There is no evidence that the comments from one prospective juror about Mr. Malone's trustworthiness in paying for her babysitting services impacted the jury pool. Moreover, the record reflects the stricken juror never stated to the potential jurors that they should trust Mr. Malone. Here there has been no clear showing of prejudice. There was no error or irregularity that prevented a proper judgment from being reached. Moreover, any prejudicial statements made were sufficiently cured by the district court's removal of Juror 6 and its issuance of a curative instruction.[4] This assignment of error is without merit.

### Motion for New Trial

In its final assignment of error, IET asserts that the district court erred in denying IET's motion for a new trial on peremptory and discretionary grounds, pursuant to La. Code Civ. Proc. arts. 1972 (1) and 1973, respectively. IET contends that the jury's verdict is clearly contrary to the law and evidence because Kullman's charges for attorneys' fees and expenses were unreasonable, it committed misconduct during voir dire and relevant evidence was excluded. IET

---

[4] We note that IET did not make contemporaneous objection when Juror 6 made statements about Mr. Malone.

avers that the cumulative effect of these errors prejudiced the jury and IET at trial, resulting in a miscarriage of justice.

IET avers that the jury's verdict is clearly contrary to the law and evidence and entitles IET to a new trial on peremptory grounds under Article 1972(1) because the jury's finding that IET owed Kullman the full amount claimed is contrary to applicable law requiring that attorneys' fees must be reasonable and necessary. The evidence presented at trial established that several of Kullman's charges for attorneys' fees and expenses were unreasonable, unnecessary, and unauthorized. IET asserts that Kullman's invoices— dated between October 26, 2011, to July 30, 2012— failed to state the time its lawyers and staff spent on legal services; consequently, it breached its duty to keep IET "reasonably informed about the status of the matter," under La. R. Prof. Cond. 1.4(a)(3). IET argues that this omission reflects that Kullman failed to carry its burden of proof at trial to prove that the attorneys' fees it charged in each of those invoices "were reasonable and not excessive ...." *Dutel v. Succession of Touzet*, 94-0978, p. 7 (La. App. 4 Cir. 1/19/95), 649 So.2d 1084, 1087. It further argues the jury was unable to determine the reasonableness of the fees due to this omission.

IET asserts Ben Miller, a Kullman associate, admitted in this testimony that the invoices issued during 2015 alone included hourly charges of at least $15,000 for travel time between his Baton Rouge home and Kullman's office or other locations in New Orleans, in addition to charges of at least $4,000 in mileage and other expenses for those trips. IET contends that Mr. Miller's behavior was unacceptable because he was charging for driving from his home to Kullman's office. Kullman's own legal expert, labor attorney Thomas McGoey, testified that

he understood Mr. Gantt having an issue with being charged for the commute from Baton Rouge to New Orleans for a deposition.

Additionally, IET asserts the district court erred in failing to grant IET a new trial on discretionary grounds under La. Code. Civ. Proc. art. 1973 because the district court's award of the full amount of Kullman's claim is clearly contrary to the law and evidence due to the unreasonableness of Kullman's charges for attorneys' fees and expenses. IET avers that upholding the district court's judgment would result in a miscarriage of justice, and this, combined with other prejudicial circumstances surrounding the trial constitute good grounds for granting a new trial. IET asserts those prejudicial circumstances include Kullman's counsel's prejudicial misconduct during voir dire discussed in support of its second assignment of error and the district court's prejudicial exclusion of evidence of the unreasonableness of Kullman's paid attorney fee invoices as discussed in support of its third assignment of error. We disagree.

A new trial shall be granted, upon contradictory motion of any party, "when the verdict or judgment appears clearly contrary to the law and the evidence." La. Code Civ. Proc. art. 1972(1). Moreover, a new trial may be granted on discretionary grounds, "in any case if there is good ground therefor, except as otherwise provided by law." La. Code Civ. Proc. art. 1973. Rulings on a motion for new trial are reviewed under an abuse of discretion standard of review. *Sunset Harbour, LLC v. Brown*, 22-0572, p. 9 (La. App. 4 Cir. 1/9/23), 356 So.3d 1167, 1173 (citation omitted).

First, we pretermit discussion of those arguments IET re-urges from its second and third assignments of error as those arguments have been found meritless. Additionally, we note that with regard to the reasonableness of

15

Kullmans' attorneys' fees and expenses, the jury heard conflicting testimony from the parties' witnesses.

Mr. Gantt, for instance, testified that he is IET's founder and he retained Kullman to represent IET. He testified that although it was explained to him that Kullman's billing would fluctuate and that collective action lawsuits, such as his, were complicated and labor intensive, he ultimately found Kullman's billing deceptive and that he was unfairly being charged or travel expenses. He recounted Kullman's monthly invoices increasing to amounts of $30,000 or more, yet he believed he was only obligated to pay $5,000 monthly. He admitted to being in a "perpetual state of arrearment." He further testified that he disputed travel charges for Kullman's attorneys traveling between New Orleans to Birmingham and from New Orleans to Baton Rouge. He stated that he became dissatisfied with Kullman when he concluded that it was intentionally running up IET's bill.

However, Mr. Malone and Mr. McGoey, testified as to the reasonableness of Kullman's billing. Mr. McGoey's opinion was based upon his review of the records of the Lawsuits, including depositions, pleadings, motions, answers, prior to and after consolidation, and related materials.

Mr. Malone noted that he was aware of IET's financial constraints, which is why he limited his billing on IET's behalf to approximately 30 hours, knowing that his billable rate was much higher than the associates he assigned to perform the majority of IET's defense. He testified that Mr. Gantt had been warned by him that Kullman's defense of IET would be expensive due to the labor-intensive nature of the work.

Mr. McGoey was accepted by the district court as an expert in the fields of labor and employment law as well as reasonableness and appropriateness of

16

attorneys' fees in such cases. He opined that based on his review of the applicable factors enumerated in Rule 1.5 of the Louisiana Rules of Professional Conduct, he determined Kullman's hourly billing rates to be reasonable and appropriate. He further testified that IET was being undercharged by Kullman considering what other local firms customarily charge for similar legal services. He further noted the travel expenses charged were typical and were a fraction of the bill, totaling $7,000 between February 2015 and the end of the case.

Here, where the jury was presented with conflicting testimony, it determined that Kullman's witnesses were more credible. The records reflects that the jury had a reasonable basis to conclude that Kullman was entitled to collect payment on all of its past-due invoices. Moreover, at trial Kullman's invoices issued prior to January 2015 and their formatting, were not at issue because they had been paid, and testimony was adduced to trial to demonstrate that Kullman re-formatted its invoices in response to Mr. Gantt's initial complaints. Thus, the district court did not abuse its discretion in concluding that IET was not entitled to a new trial on peremptory or discretionary grounds.

## DECREE

For the foregoing reasons, IET's exception of prescription is denied. The July 6, 2023 district court judgment and its rulings denying IET's motion for mistrial and motion for new trial, are affirmed.

**EXCEPTION OF PRESCRIPTION OVERRULED; AFFIRMED**

17